

Tel: (720) 473-7644
Fax: (720) 473-7647

9605 S. Kingston Court, Suite 200
Englewood, CO 80112
www.goodspeedmerrill.com

John Sauer, Esq.
JSauer@goodspeedmerrill.com
(719)671-6745

August 16, 2024

*__Via Certified Mail,__*
*__Return Receipt Requested & Email__*

Pueblo County Attorney's Office          Epimenio Griego, Individually
c/o Cynthia Mitchell, Esq.               c/o Cynthia Mitchell, Esq.
Pueblo County Historical Courthouse      Pueblo County Historical Courthouse
215 W. 10th Street, Room 302             215 W. 10th Street, Room 302
Pueblo, Colorado 81003                   Pueblo, Colorado 81003
mitchellc@pueblocounty.us                mitchellc@pueblocounty.us

Zach Swearingen, Individually
c/o Cynthia Mitchell, Esq.
Pueblo County Historical Courthouse
215 W. 10th Street, Room 302
Pueblo, Colorado 81003
mitchellc@pueblocounty.us

Dear Ms. Mitchell,

This letter serves as a notice of Mr. Uhernik's claims, pursuant to the Colorado Governmental Immunity Act (the "CGIA") in accordance with the requirements under C.R.S. §24-10-109. The purpose of this letter is to strictly comply with the CGIA and provide notice to Pueblo County, Mr. Epimenio Griego, and Mr. Zach Swearingen of forthcoming litigation if a resolution cannot be met prior to filing a lawsuit.[1] This letter fulfills the necessary requirements for notice under the CGIA pursuant to C.R.S. §24-10-109(2). This notice contains a concise statement of the claims' factual bases, the name and address of the claimant and his attorney, the name and address of the public employee and entity involved, a concise statement of the nature of the extent of the injury, and a statement of the amount of monetary damages requested.

The claims and factual circumstances in this letter are described in more detail in the attached Demand Letter. The claims arise from conduct beginning in May 2023 up until the time that Mr. Uhernik was fired on February 29, 2024:

---

[1] Claims against Mr. Griego and Mr. Swearingen would be brought against them in their individual capacities and this letter is being sent to Cynthia Mitchell as the likely representative of both. If Mr. Griego or Mr. Swearingen are individually represented, please forward this letter to respective counsel and provide that information to undersigned counsel.

EXHIBIT
1



a.      May 2023 – Mr. Uhernik suspected that Digital Hart Media was in breach of contract and overbilling Pueblo County and, thus, reported his suspicions to the county during this time. Commissioner Griego instructed Mr. Uhernik to disregard the Code of Ethics when he told Mr. Uhernik to skip the required bidding process. Commissioner Griego told Mr. Uhernik that he would protect Mr. Uhernik's job in light of the unethical instruction.

b.      July 29, 2023 – Commissioner Griego instructed Mr. Uhernik to disregard his duty to be impartial towards the Commissioners by instructing Mr. Uhernik to direct Commissioner Esgar to stop distributing informational videos.

c.      September 21, 2023 – Commissioner Griego again instructed Mr. Uhernik to shirk his job duties by instructing Mr. Uhernik to cease participation in the creation of videos with Commissioner Esgar.

d.      December, 2023 – January, 2024 – Commissioner Griego instructed Mr. Uhernik and Anthony Mestas, Multimedia Specialist, that if Commissioner Esgar plans to create a video, tell her Commissioner Griego already has plans to do a video on the same topic. Mr. Uhernik refused to follow Commissioner Griego's instruction to lie to Commissioner Esgar.

e.      January 27, 2024 – Commissioner Griego contacted Mr. Uhernik and accused his office of deleting a video of Commissioner Esgar from the Pueblo County Facebook page. The video was never deleted. Mr. Uhernik made a complaint regarding this situation to the County Attorney's Office.

f.      February 16, 2024 – Mr. Uhernik made a complaint regarding the above accusation to Human Resources. No investigation has been initiated into Mr. Uhernik's accusations.[2]

g.      February 29, 2024 – Mr. Uhernik's employment with Pueblo County was terminated. Mr. Uhernik was not given an opportunity to be heard prior to termination in violation of his constitutional due process rights as well as in violation of the rights promulgated in Policy #600, Code of Ethics.

The above factual bases give rise to numerous claims. As mentioned above, the claims are described in greater detail in the attached Demand Letter. The claims are as follows:

a.      **Termination in Violation of Public Policy** – Commissioner Griego willfully directed Mr. Uhernik to shirk his job duties. Upon information and belief, Mr. Swearington and Mr. Griego conspired to effectuate this outcome. After Mr. Uhernik refused to follow Commissioner Griego's illegal demands, Mr. Uhernik filed a complaint to the County Attorney's Office. Subsequently, Mr. Uhernik was terminated at the direction of and approval by Mr. Griego and Mr. Swearingen without notice and a hearing.

---

[2] This fact was substantiated when no evidence of an investigation was present in response to Pueblo County's response to Mr. Uhernik's Colorado Open Records Act, C.R.S. § 24-72-201 request.

**Re: CGIA Notice**
August 16, 2024
Page 3



b.      **Denial of Procedural Due Process** – Mr. Uhernik was denied his constitutionally protected right of notice and an opportunity to be heard. Mr. Uhernik had a constitutionally-protected interest in his employment that was created by the Pueblo County Policy Manual. Colorado Law affords a property interest in continued employment through employee policies such as the County Policy Manual. Mr. Uhernik was entitled to the protections of the procedural due process guarantee of the United States Constitution. Pueblo County deprived Mr. Uhernik of his right to be heard prior to termination when he was fired on February 29, 2024.

c.      **Denial of Substantive Due Process** – Commissioner Griego clearly abused his power when he asked Mr. Uhernik to shirk his job duties and when he terminated Mr. Uhernik without a pre-termination hearing.

d.      **Breach of Contract/Promissory Estoppel**- Policy #600 and the Policies of Pueblo County Government established an implied promise or explicit contractual promises to Mr. Uhernik with respect to continued employment and disciplinary procedures which were not followed.

## DAMAGES

Mr. Uhernik's damages include back pay, compensatory damages, punitive damages, and nominal damages. Mr. Uhernik earned approximately $96,000 per year. Mr. Uhernik planned on working with Pueblo County for the foreseeable future and is owed front pay for loss of compensation. Mr. Uhernik was humiliated publicly by being fired from Pueblo County without proper justification. Mr. Uhernik is owed half of his accrued sick time per Pueblo County policy. Mr. Uhernik is seeking damages in the amount of $340,000.

Sincerely,

**GOODSPEED MERRILL**

*John-Paul C. Sauer*

John-Paul C. Sauer



Tel:  (720) 473-7644
Fax:  (720) 473-7647

9605 S. Kingston Court, Suite 200
Englewood, CO 80112
www.goodspeedmerrill.com

John Sauer, Esq.
JSauer@goodspeedmerrill.com
(719)671 -6745

August 16, 2024

*Via Certified Mail,*
*Return Receipt Requested & Email*

Pueblo County Attorney's Office
c/o Cynthia Mitchell, Esq.
Pueblo County Historical Courthouse
215 W. 10th Street, Room 302
Pueblo, Colorado 81003
mitchellc@pueblocounty.us

Epimenio Griego, Individually
c/o Cynthia Mitchell, Esq.
Pueblo County Historical Courthouse
215 W. 10th Street, Room 302
Pueblo, Colorado 81003
mitchellc@pueblocounty.us

Zach Swearingen, Individually
c/o Cynthia Mitchell, Esq.
Pueblo County Historical Courthouse
215 W. 10th Street, Room 302
Pueblo, Colorado 81003
mitchellc@pueblocounty.us

**In Uhernik v. Pueblo County, et al.**

Dear Ms. Mitchell,

As you are aware, the law firm of Goodspeed Merrill represents Adam Uhernik in connection with disputes pertaining to his employment with Pueblo County. Please continue directing all correspondence regarding this matter to this firm. The purpose of this letter is to demand payment to Mr. Uhernik in the amount of $340,000.00.

Mr. Uhernik served as the Public Information Officer of Pueblo County from July 2018 until February 29, 2024. The overarching purpose of the position is to provide an informational conduit between Pueblo County and the public, including the media. As the Public Information Officer, Mr. Uhernik was the key spokesperson for the Pueblo County government and was responsible for all internal and external communications, including managing official Pueblo County social media pages and accounts. The position of Public Information Officer is an executive level position and reports to all three County Commissioners to move forward their communication goals when it comes to "official Pueblo County Government business."

Commissioner Epimenio "Eppie" Griego ("Griego") harassed, intimidated, and defamed Mr. Uhernik. Griego inappropriately attempted to pull Mr. Uhernik into efforts to undermine



Commissioner Daneya Esgar ("Esgar"). Griego went so far as to direct Mr. Uhernik to not perform his job with respect to Esgar, to violate the Pueblo County Procurement Rules, to violate the County's Code of Ethics, and to violate the County's Colorado Open Records Act ("CORA") Policy. Griego acted as if the Public Information Office was for his self-promotion alone, when the office was established to serve the Pueblo County government.

On January 27, 2024, Mr. Uhernik made a complaint regarding his concerns to the County Attorney's Office and on Friday February 16, 2024, to Human Resources. On February 29, 2024, Mr. Uhernik's employment with Pueblo County was terminated. Upon information and belief, there was never an investigation regarding Mr. Uhernik's concerns. Additionally, Mr. Uhernik was not given an opportunity to be heard prior to his termination, which is a direct violation of his Constitutional rights, implied and express contractual rights to due process. Mr. Uhernik's termination with Pueblo County violates public policy and an analysis of his viable legal claims is explained in more detail below.

## BACKGROUND FACTS

### I.    Commissioner Esgar's Videos

On July 29, 2023, Griego contacted Mr. Uhernik and took issue with informational videos produced by the Public Information Office and distributed by Esgar. Griego instructed Mr. Uhernik to direct Esgar to stop distributing the videos. Mr. Uhernik responded that Esgar had every right to distribute the videos, she was doing so with her own personal email account, and that he was required to treat each commissioner fairly. Mr. Uhernik told Griego to take the issue up with Esgar in executive session rather than pull him into a dispute.

On September 21, 2023, Griego again contacted Mr. Uhernik and complained that Esgar should not be creating videos. Griego instructed Mr. Uhernik not to participate in the creation of videos with Esgar. Mr. Uhernik explained to Griego that it was part of his job to assist with the creation of these videos, that if he did not, he would fire Mr. Uhernik. Griego told Mr. Uhernik that it takes two votes for him to lose his job, suggesting that, so long as Mr. Uhernik capitulates, he would be protected. Mr. Uhernik explained that Esgar could create the videos so long as they pertained to official government business. Mr. Uhernik told Griego that he no longer wanted to be drawn into the political fighting and that Griego should take this issue up with the other commissioners during the executive session. Mr. Uhernik asked Griego to stop directing him to shirk his job duties when it comes to Esgar.

In December of 2023 and January of 2024, Griego instructed Mr. Uhernik and Anthony Mestas ("Mestas"), Multimedia Specialist, that if Esgar plans to create a video, tell her Griego already has plans to do a video on the same topic. Mr. Uhernik told Griego that he and Mestas would not lie to Esgar because it could get them fired. Griego again told Mr. Uhernik that it takes two votes to get fired-another effort to coerce Mr. Uhernik to shirk his job duties and violate policy.

### II.    Digital Hart Media Contract

Following the departure of Commissioner Ortiz, Mr. Uhernik began meeting with Griego on a bi-monthly basis. In October of 2023, Griego started pressuring Mr. Uhernik and repeatedly told him Nikki Hart at Digital Hart Media should get another $80,000 contract for the year 2024. Mr. Uhernik indicated he was happy to work with Digital Hart Media on a project-by-project basis, but the County



did not need that much graphic design. Mr. Uhernik told Griego that Pueblo County did not have enough work for that size of contract and that the contract would have to be bid out under the Pueblo County's Procurement Policy because the scope of work did not justify a sole source justification. The Procurement Policy says professional services may be procured without the benefit of competition. However, it is recommended that a documented quote process be conducted when appropriate. The person making the acquisition shall use professional judgment to ensure that the County is receiving maximum value. Also, Mr. Uhernik was instructed by the Purchasing Manager that in order to procure services with Digital Hart Media for $80,000, a sole source justification would be required, but graphic design as a standalone scope of work is not enough to justify sole source. Therefore Mr. Uhernik was put in a position where he would have to lie on procurement documents for further procurement of the contract, knowing the County did not have an appropriate scope of work for an $80,000 contract.

Mr. Uhernik also suspected and can prove that Digital Hart Media was in breach of contract and overbilling the County during its 2023 contract and reported this to the County in May of 2023. Digital Hart Media is representing several political candidates including a competing campaign against sitting Esgar. Mr. Uhernik also has knowledge that Digital Hart Media has done work for current sitting Commissioner Zach Swearingen ("Swearingen") in both his campaign and personal business. Further, under Section V(3) of the County Code of Ethics, Mr. Uhernik and Griego are required to:

        a.      Avoid the intent or appearance of unethical, conflicting or compromising practice in relationships, actions and communications;

        b.      Diligently follow all lawful instructions while using professional judgment, reasonable care, and exercising only the authority granted;

        c.      Conduct all purchasing activities in accordance with all applicable laws and consult with the County Attorney's Office regarding legal questions and/or legal ramifications of purchasing decisions;

        d.      Refrain from any private or professional activity that would create a conflict, or a perception or appearance of a conflict, between personal interests and the interests of Pueblo County;

[…]

        g.      Promote positive supplier relationships through impartiality in all phases of the purchasing cycle.

*Pueblo County Government, Code of Ethics, Policy #600, Chapter 08, Eff. June 2, 2020.*

Mr. Uhernik expressed to Griego on several occasions that bidding out the work for Digital Hart Media was required and that it would cause frustration to other local vendors to award such a large contract without following the bid process. Griego's requests clearly call for Mr. Uhernik to disregard the Code of Ethics. Mr. Uhernik expressed to Griego that he would not participate in the requisition of Digital Hart Media because he could lose his job. Griego told Mr. Uhernik that he would protect Mr. Uhernik's job and instructed Mr. Uhernik to push the contract through despite knowing there was not an appropriate scope of work and without sending the contract out to bid. Ultimately, Mr. Uhernik did not follow Griego's instruction.



### III.     Colorado Open Records Act Policy

On January 27, 2024, Griego contacted Mr. Uhernik and accused his office of deleting a video of Esgar from the Pueblo County Facebook page. The video in question depicts Esgar reacting to comments made by Commissioner Griego about a fallen officer from Pueblo County. Mr. Uhernik indicated that neither he nor Mestas, the two administrators of the Pueblo County Facebook page, deleted the video because in his view, it would be unethical and illegal. Mr. Uhernik and Mestas undertook efforts to locate the video and determined that it had not been deleted.

Mr. Uhernik contacted Griego after the video was located and asked him what the official government business reason was for the request. Griego would not give Mr. Uhernik a reason. So, Mr. Uhernik repeated this inquiry three times, but Griego would not tell him. Mr. Uhernik told him that he could not provide the video due to the nature of the request. More specifically, Mr. Uhernik instructed Griego that the video request appeared to support a campaign competing against Esgar or for personal gain on behalf of Griego, and that he needed to make a written request for the video. No written request for the video was made by Griego.

Mr. Uhernik sought a written request in conformity with policy. Mr. Uhernik sought a written request to protect himself from any blowback from Esgar, considering it was an election year. Mr. Uhernik was put in a position of strife between two of his bosses. Indeed, the Pueblo County Public Records Policy (CORA) (effective August 5, 2015) Section III(1), permits Mr. Uhernik to require that the request be made in writing. Mr. Uhernik did this because of his belief that the video would be used for a political campaign or for personal gain. Furthermore, under the County's CORA policy, Griego would be charged fees in accordance with the policy for Mr. Uhernik to complete the request. Mr. Uhernik further understands that the Pueblo County Code of Ethics states:

> "Elected officials … shall only permit the use of County time, property, equipment supplies or other resources for the purposes of conducting Pueblo County business. County time, property, equipment, supplies or other resources shall not be used for private gain… or political purpose. Any complaints regarding the use of County resources shall be sent to the County Attorney's Office which shall review the matter and provide an advisory opinion regarding the alleged improprieties."

*Id.* Section IV(A).

On January 27, 2024, Mr. Uhernik made a complaint regarding this situation to the County Attorney's Office and on Friday February 16, 2024 to Human Resources and did not receive any follow-up communication. To his knowledge, no investigation has been initiated into his accusations, nor have they been sent to a third party for investigation.

### IV.     County's Actions Following the January 27 Complaint

On February 12, 2024, Griego submitted a Memorandum to Swearingen, Esgar, and you, Cynthia Mitchell, explaining that Mr. Uhernik's allegations in the complaint were a "waste of resources by having the County Attorney spend countless hours researching these claims of alleged harassment." *See* Griego's Memorandum, attached as **Exhibit 1**. Griego further explained and that Mr.

Re: Demand to Pueblo County
August 16, 2024
Page 5



Uhernik's recent actions, including filing a complaint, have made Griego "pause and think about Adam's overall performance as the Senior Public Information Officer for Pueblo County." *Id.* Griego then requested to terminate Mr. Uhernik at the end of his memorandum. *Id.*

On February 15, 2024, Mr. Uhernik requested PTO for February 20, 2024, through February 23, 2024, and explained that Mestas would fill in for Mr. Uhernik's absence. Mr. Uhernik did not hear back from the County and then followed up on February 16, 2024, to confirm that his request for PTO was received. *See* Mr. Uhernik's emails to Pueblo County, attached as **Exhibit 2**. Also, on February 15, 2024, Mr. Uhernik notified Pueblo County that he was enrolling in counseling to help with his recent symptoms of depression and anxiety. *See* Mr. Uhernik's February 15 Statement, attached as **Exhibit 3**. These symptoms were a direct result of the County and Griego's actions.

On February 16, 2024, Mr. Uhernik contacted Pueblo County's HR manager, Brandon Matthews ("Matthews"), via a phone call to ask for an update regarding his January 27 Complaint. Matthews informed Mr. Uhernik that he was unaware of the January 27 Complaint and that he had not been contacted by Genesio or Mitchell regarding the Complaint. Matthews instructed Mr. Uhernik to file an official complaint through the online HR portal. Mr. Uhernik followed Matthew's advice and filed the Complaint. Also on February 16, 1024, Mitchell told Mr. Uhernik that he must resign by February 20, 2024, or else the Board of County Commissioners ("BOCC") would talk about terminating Mr. Uhernik on February 22, 2024, in a public session. Mitchell explained that it would make everything easier if the County did not have to terminate Mr. Uhernik publicly.

On February 15, 2024, Matthews followed up with Mr. Uhernik. Matthews stated that he reported the complaint to Mitchell, and Genesio, but he had not received any responses from either Mitchell or Genesio.

On February 22, 2024, in response to a request from Mitchell asking for Mr. Uhernik's permission for the BOCC to discuss Mr. Uhernik's separation, Mr. Uhernik denied the requested permission. Further, on February 26, 2024, Mr. Uhernik, through his attorneys at Goodspeed Merrill, further communicated that he did not give permission for the BOCC to discuss personnel matters in an upcoming executive session.

On February 29, 2024, Mr. Uhernik was terminated in a special meeting at approximately 4:15 pm. Mr. Uhernik was required to cash out his pension plan with Pueblo County and further did not earn the vested $40,000 match that he would have earned if he was not terminated. Mr. Uhernik can no longer earn his pension with Pueblo County due to his termination. Per the terms of Mr. Uhernik's employment, Pueblo County was scheduled to contribute 14% of Mr. Uhernik's salary, each month, to Mr. Uhernik's pension plan. Mr. Uhernik's lost his rights to Pueblo County's retirement benefits upon his termination. Therefore, Mr. Uhernik will no longer be able to retire within the next fifteen years as planned.

Following Mr. Uhernik's termination from Pueblo County, Mr. Uhernik could not find work until May 2, 2024. Mr. Uhernik accepted the position with Care and Share as the company's Director of Marketing and Communications. While working with Pueblo County, Mr. Uhernik was scheduled to earn a base salary of $96,972 for 2024. Mr. Uhernik's new salary with Care and Share is $75,000 per year. Mr. Uhernik no longer receives his annual COLA raise of 3-5%. Additionally, Mr. Uhernik is now earning significantly less in benefits with Care and Share than he did with Pueblo County. Furthermore,



Mr. Uhernik is required to commute daily to Colorado Springs and has incurred and continues to incur significant commuting expenses.  Upon our investigation, Mr. Uhernik will suffer damages, due to his significantly lower wages and benefits, in the approximate amount of $1,289,328.78.

<u>**PRELIMINARY CLAIMS ANALYSIS**</u>

I.      **Termination in Violation of Public Policy (Against Griego and Swearingen, in their individual capacities)**

It is against public policy to terminate an at-will employment relationship if the discharge is the result of the employee refusing to engage in conduct that would violate public policy. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666–67 (Colo. 1999). There are 4 elements in such claims:

(1) the employer directed the employee to perform an illegal act as part of the employee's work related duties; (2) the action directed by the employer would violate a statute or clearly expressed public policy; (3) the employee was terminated as a result of refusing to perform the illegal act; and (4) the employer was aware or should have been aware that the employee's refusal was based upon the employee's reasonable belief that the act was illegal.

*Coors Brewing Co. v. Floyd*, 978 P.2d 663, 667 (Colo. 1999). An employee who is put to the choice of either obeying an employer's order to violate the law or losing his or her job is a violation of public policy." *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 103 (Colo. 1992). Additionally, the Colorado Supreme Court has determined that an employee terminated in retaliation for exercising a job-related right could also state a cognizable claim for wrongful discharge *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 552 (Colo. 1997). Furthermore, actions by public employees that are willful and wanton are actionable and not protected by the Colorado Governmental Immunity Act ("CGIA"). C.R.S. § 24-10-118; *McDonald v. Wise*, 769 F.3d 1202, 1217 (10th Cir. 2014). Conduct that is done "heedlessly and recklessly, without regard to consequences, or of the rights and safety of others" is willful and wanton. *Id.* at 1218.

Griego willfully and wantonly directed Mr. Uhernik to repeatedly shirk his job duties.  First, Griego instructed Mr. Uhernik to direct Esgar to stop distributing informational videos and to stop participating in the creation of the videos with Esgar. The videos pertained to official government business.  As part of Mr. Uhernik's job duties, he was required to assist with the creation of said videos and be impartial to the respective Commissioners. The Public Information Office was established to serve the Pueblo County Government. While acknowledging his responsibility, Mr. Uhernik refused to comply with Griego's improper request. Mr. Uhernik told Griego that it was part of his job to assist with the videos, and if he refused to do so he could be terminated. Griego then instructed Mr. Uhernik to tell Esgar that if she plans to create additional videos, that Griego already has plans to do so on the same topic. This instruction was based on a lie to prevent Esgar from making additional videos. Moreover, such conduct by Griego is considered by Colorado courts to be willful and wanton conduct. Mr. Uhernik again refused and explained to Griego that complying with his instruction to lie could lead to Mr. Uhernik's termination.

Second, Griego demanded that Nikki Hart at Digital Hart Media should get another $80,000 contract for the year 2024. Mr. Uhernik properly responded to the unlawful and unethical request by



telling Griego that his demands were improper and in direct violation of the Pueblo County Procurement Policy. Thus, Griego willfully and wantonly directed Mr. Uhernik to lie on procurement documents to further procurement of the contract, knowing the County did not have an appropriate scope of work for an $80,000 contract to be awarded to Nikki Hart nor did the County follow the proper bidding procedures for the contract. Griego knew his instructions were illegal and knew it was a violation of the Code of Ethics, as indicated by his unlawful promise of protecting Mr. Uhernik if he complied.

Mr. Uhernik was subsequently terminated by Griego after Mr. Uhernik refused to comply with Griego's illegal instructions. The discharge was clearly a result of Mr. Uhernik refusing to engage in conduct that would violate public policy. Moreover, Mr. Uhernik refused to disregard his obligation to remain impartial to commissioners, refused to lie about the informational videos, and refused to disobey the Code of Ethics and Procurement Policy. Mr. Uhernik's termination for such refusal to engage in illegal activity is a clear violation of public policy. Mr. Uhernik's job was created to serve Pueblo County Government. Griego acted as if Mr. Uhernik was required to comply with his unsubstantiated motives. Griego was aware that Mr. Uhernik's refusal was proper and based on Mr. Uhernik's own belief that the act was illegal and against public policy.  Mr. Uhernik was clearly terminated in retaliation for exercising his job-related right in choosing to be impartial and honest as it relates to his job duties. Griego acted willfully and wantonly when he directed Mr. Uhernik to lie to Esgar, when Griego told Mr. Uhernik to stop working for Esgar, and when Griego directed Mr. Uhernik to improperly award Nikki Hart the $80,000 contract. Such conduct was done recklessly because Griego did not regard the consequences of the possible actions that could be taken against Mr. Uhernik if Mr. Uhernik complied with his illegal demands. Finally, as indicated by the February 12 memorandum written by Griego explaining that Mr. Uhernik's complaints were a "waste of resources," Griego willfully retaliated against Mr. Uhernik for exercising his rights.

Mr. Uhernik has an exceptionally strong claim for termination in violation of public policy. Griego's conduct was done willfully and wantonly. Thus, Mr. Uhernik is entitled to the full amount of damages for such wrongful termination and retaliation.

## II.    Breach of Contract and Promissory Estoppel (Against Pueblo County)

An employee originally hired under a contract terminable at will may be able to enforce the termination procedures in an employee manual under either contract principles or under a theory of promissory estoppel. *Dickey v. Adams Cnty. Sch. Dist. No. 50*, 773 P.2d 585, 586 (Colo. App. 1988), aff'd and remanded, 791 P.2d 688 (Colo. 1990). A public employer's promulgated termination procedures for its employees must be strictly adhered to for all its employees, even those who are otherwise under "at-will" employment arrangements. *Ness v. Glasscock*, 781 P.2d 137, 138-39 (Colo. App. 1989).

The County Policy Manual states that The Board of County Commissioners and each Elected Official shall allow the employee the right to be heard prior to termination. The Elected Official shall make a final decision as to disciplinary action and employment status, and retains full discretion to assess disciplinary action, up to and including termination of employment. The Board of County Commissioners may delegate this authority to the appropriate Department Director or Supervisor. Application of this policy is subject to Section 30-10-506 C.R.S. and other applicable law.



The Code of Ethics Policy explicitly protects whistleblowers, including Mr. Uhernik, and includes even more robust due process protections. It specifically provides that "Notice and an opportunity for a hearing shall be provided prior to imposition of any disciplinary consequence related to employment." It further provides that "Elected officials, appointees, and employees who violate this Code may be subject to civil liability and/or criminal prosecution as provided by law." The Policy also "strongly encourage[s]" employees such as Mr. Uhernik to report violations, which he did.

These documents create express obligations upon the County prior to terminating an employee. Mr. Uhernik reasonably relied upon the dictates of these policies, including, but not limited to, the fact that he would not suffer reprisals or retaliation for making reports of ethics violations, and that he would be afforded notice and a hearing prior to the imposition of any disciplinary consequence.

The County breached these provisions when it fired Mr. Uhernik without following its obligations. On January 27, 2024, Mr. Uhernik made a complaint regarding the CORA situation and the Digital Hart Media contract to the County Attorney's Office on Friday February 16, 2024 to Human Resources. Mr. Uhernik was then terminated after he refused to resign on February 29, 2024. Mr. Uhernik's complaints should have triggered an investigation into Griego's actions, and the investigation never happened. Pueblo County also failed to properly respond and produce documents pursuant to the Pueblo County Public Records Policy Section IV (1). *See* Pueblo County Public Records Policy, attached as **Exhibit 4**.

### III.    42 U.S.C. § 1983 Denial of Procedural Due Process (Against Griego and Swearingen, in their individual capacities)

Mr. Uhernik was denied his Constitutionally protected right of notice and an opportunity to be heard prior to his termination. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494 (1985). A property interest in employment is created and defined by existing rules or understandings that stem from an independent source such as state law. *Id.* at 538. A pre-deprivation hearing which includes an explanation of the charges, an explanation of the information gathered, and an opportunity to respond so long as there is also a full post-deprivation hearing. *Id* at 546. In this case, Mr. Uhernik was not provided with a pre or post deprivation hearing.

Under Colorado law, an employee personal handbook may grant to an employee a property interest in continued employment which entitles the employee to the protections of the procedural due process guarantee of the United States Constitution. *Adams Cnty. Sch. Dist. No. 50 v. Dickey*, 791 P.2d 688, 694 (Colo. 1990). A Colorado public employee is deprived of property without due process of law if "mutually explicit understandings create a sufficient expectancy of continued employment to give the employee a legitimate claim of entitlement." *Id.* at 695. A public employer's promulgated termination procedures for its employees must be strictly adhered to for all of its employees, even those who are otherwise under "at-will" employment arrangements. *Ness v. Glasscock*, 781 P.2d 137, 138-39 (Colo. App. 1989).

Mr. Uhernik had a property interest in his employment in accordance with Pueblo County's Ethics Policy to which due process protections of the United States Constitution are applicable. Because Pueblo County's wrongful termination of Mr. Uhernik provided no opportunity to address any



perceived defaults, Mr. Uhernik was not afforded any level of due process. The unlawful and wrongful acts by Pueblo County constitute and resulted in a deprivation of Mr. Uhernik's constitutionally protected property rights, and the deprivation of those independent rights and due process rights occurred without the due process of law. As a result of Pueblo County's violation of Mr. Uhernik's constitutionally protected right to be heard prior to termination, Mr. Uhernik has suffered damages, and loss of use of those rights and property interests. If this case proceeds to litigation, Mr. Uhernik will seek the full extent of these damages in amounts to be determined by a trial.

**IV.      42 U.S.C. § 1983 Denial of Substantive Due Process (Against Griego and Swearingen, in their individual capacities)**

The Fourteenth Amendment's substantive due process component only protects citizens from arbitrary, abusive, or oppressive use of governmental power. *Daniels,* 474 U.S. at 332, 106 S.Ct. 662. That conduct must be so egregious that it "shocks the conscience" of the court. *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); *Uhlrig v. Harder,* 64 F.3d 567 (10th Cir.1995). Rights of substantive due process are generally not founded upon state provisions "but upon deeply rooted notions of fundamental personal interests derived from the Constitution. *Cross Continent Dev., LLC v. Town of Akron, Colo.,* 742 F. Supp. 2d 1179, 1190 (D. Colo. 2010).

Griego clearly abused his power when he terminated Mr. Uhernik. As explained above, Mr. Uhernik had a property interest in his job because of the Ethics Policy that granted continued employment through a pre-termination hearing. Griego abused his power when he repeatedly threatened Mr. Uhernik followed by terminating Mr. Uhernik without following the proper procedures contained in the Ethics Policy. It was clear that Griego also had conspired with Swearingen with respect to the termination of Uhernik- as was directly expressed by Griego when he told Mr. Uhernik "it takes two votes to get you fired." Furthermore, Pueblo County's decision to terminate Mr. Uhernik was made in a wrongful, arbitrary, and irrational manner. The County of Pueblo provided no opportunity to Mr. Uhernik to discuss and rectify any issues or problems with the conflict between Mr. Uhernik and Griego. The wrongful termination by Pueblo County and its agents and commissioners, in retaliation of Mr. Uhernik's complaints, constitutes an arbitrary and irrational deprivation to Mr. Uhernik of his independent constitutionally protected property rights. The decisions of the County of Akron and its wrongful acts were made and undertaken with the knowledge and acquiescence of Pueblo County's Board of County Commissioners, the County of Pueblo's attorney, and Pueblo County's Human Resources Department. These potential defendants were aware that the County of Pueblo's decision and motive was improper, but nonetheless ratified it. Mr. Uhernik has suffered damages, and loss of use of those rights and property interests. If this case proceeds to litigation, Mr. Uhernik will seek the full extent of these damages in amounts to be determined by a trial.

<u>**DEMAND**</u>

In sum, Mr. Uhernik was an excellent employee for the County of Pueblo and successfully performed his duties as a Public Relations Officer. In fact, since his termination, Mr. Uhernik has received support from former colleagues, friends, and other professional relationships that he established during his time with Pueblo County. Mr. Uhernik exercised his rights and was subsequently terminated in response. Rather than investigating Mr. Uhernik's complaints and addressing and holding Griego accountable, Pueblo County retaliated by firing Mr. Uhernik. Pueblo County's failure to



properly handle the situation pursuant to law and its contractual obligations, amounts to significant damages suffered by Mr. Uhernik.

We are confident that there is no dispute about the terms and applicability of the County's Policies and Mr. Uhernik's claims. Mr. Uhernik will be able to fully recover all damages, including, but not limited to, back pay, front pay, all future wages, and all applicable damages to be proven at trial. We hereby demand that you pay Mr. Uhernik $340,000 in order for Pueblo County to avoid costly and embarrassing litigation which will inherently involve many current and former Pueblo County employees. If you fail to comply with this demand or make a reasonable offer to compensate Mr. Uhernik for his losses within ten (10) days of receiving this letter, Mr. Uhernik will take all necessary action to enforce his legal rights and seek all applicable damages.

If you would like to discuss Mr. Uhernik's claims further, please feel free to call our office directly.

Sincerely,

**GOODSPEED MERRILL**

John-Paul C. Sauer

John-Paul C. Sauer